IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM OMAR MEDINA** | : CIVIL ACTION |
| | : |
| v. | : NO. 20-2426 |
| | : |
| **ALFRED HALLMAN,** *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**  September 22, 2020

A person working while in custody in state prison awaiting his criminal trial has the constitutional right to be free from cruel and unusual punishment from his work supervisor and to complain about his supervisor's misconduct without retaliation. The supervisor's lewd and unprofessional comments towards him at work are not cruel and unusual by themselves. But the worker has the right to complain without fear of a responsive retaliation including losing visitation with his children. He cannot sue persons for civil rights violations whose only role is supervision; he must plead they participated in or knew of the misconduct. We today dismiss amended civil rights claims filed by an incarcerated man for cruel and unusual punishment and against a jail warden and administrator. He may move forward with his First Amendment retaliation claim against his work supervisor.

**I.     Alleged *pro se* facts**[1]

William Omar Medina worked as a line worker in the Lehigh County Jail's kitchen while in custody awaiting his criminal trial.[2] The Jail's Food Administration Supervisor, Alfred Hallman, harassed Mr. Medina at work.[3] Supervisor Hallman repeatedly told him Mr. Medina to "suck [his] dick" and referred to Mr. Medina as "numb nuts."[4]

Mr. Medina reported this harassment to Supervisor Hallman's supervisor, Richard Talacs, the Office of the Chief County Detective of the District Attorney, and a person identified as "Counselor Megan."[5] The Lehigh County Prison Administrator, Douglas Mette, and the Warden, Kyle Russell, did nothing to stop the alleged harassment and later denied Mr. Medina's grievance against Supervisor Hallman.[6]

Supervisor Hallman, in retaliation for Mr. Medina's reporting the alleged harassment, filed a major misconduct against Mr. Medina.[7] Mr. Medina then lost his job in the Jail's kitchen and his privileges to see his children for sixty days and may face a sixty-day extension in his period of incarceration.[8]

Mr. Medina suffered severe emotional distress as a result of Supervisor Hallman's alleged harassment. Mr. Medina attempted self-harm and his doctors decided to increase his anti-anxiety/antidepressant medication.[9]

## II.  Analysis

Mr. Medina claims Supervisor Hallman, Administrator Mette, and Warden Russell violated the Eighth Amendment's prohibition against cruel and unusual punishment and retaliated against him for exercising his First Amendment right to report improper conduct. Supervisor Hallman, Administrator Mette and Warden Russell move to dismiss arguing: (1) Mr. Medina has not adequately pleaded his claims; (2) qualified immunity shields Supervisor Hallman, Administrator Mette and Warden Russell from suit; and, (3) Mr. Medina failed to plead exhaustion of administrative remedies under the Prison Litigation Reform Act.[10] Mr. Medina pleads a retaliation claim against Supervisor Hallman but we must dismiss his other claims without prejudice.

### A.   Mr. Medina does not state a claim against Administrator Mette and Warden Russell.

Mr. Medina fails to state a claim against Administrator Mette and Warden Russell. Mr. Medina alleges Warden Russell and Administrator Mette violated his rights by denying his grievance against Supervisor Hallman and failing "to put a stop to [Supervisor Hallman's] sexually derogatory statements."[11]

"A civil rights claim cannot be premised on a theory of *respondeat superior*."[12] A plaintiff must show each named defendant took part in the events or occurrences which underlie a claim.[13] Mr. Medina does not allege Administrator Mette or Warden Russell had personal involvement in the events or occurrences underlying his claims. He does not allege Administrator Mette or Warden Russell abused or harassed him, and he does not allege they retaliated against him for reporting Supervisor Hallman.

We dismiss the claims against Administrator Mette and Warden Russell.

### B.   Mr. Medina does not state a claim for cruel and unusual punishment against Supervisor Hallman.

Mr. Medina does not state a claim for cruel and unusual punishment under the Eighth Amendment against Supervisor Hallman. Mr. Medina alleges Supervisor Hallman routinely made sexually derogatory and abusive comments towards him.[14] While Mr. Medina characterizes these comments as sexual harassment, Supervisor Hallman characterizes them as "verbal insults."[15] Under either interpretation, Mr. Medina does not state an Eighth Amendment claim.

"It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment."[16] While our Court of Appeals recently recognized "sexual abuse of inmates by prison officials offends the Eighth Amendment," it also clarified a prisoner must allege "sexual contact" rather than "offensive comments" to state an Eighth Amendment

3

claim under this theory.[17]   Mr. Medina does not allege he had sexual contact with Supervisor Hallman. We dismiss his Eighth Amendment claims against Supervisor Hallman.

### C.     Mr. Medina pleads a retaliation claim against Supervisor Hallman.

Mr. Medina pleads a First Amendment retaliation claim against Supervisor Hallman. "A prisoner alleging First Amendment retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."[18]   Causation can be shown through an allegation of either "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."[19]   When, as here, a *pro se* inmate alleges a prison official filed charges of misconduct against him in retaliation for exercising his constitutional rights, our Court of Appeals directs "the word 'retaliation' in [an inmate's] complaint sufficiently implies a causal link between [the inmate's] complaints and the misconduct charges filed against him."[20]

In *Pepe v. Lamas*, our Court of Appeals vacated Judge Caldwell's dismissal of an inmate's retaliation claim against the prison's kitchen work supervisor.[21]   The inmate alleged he filed a grievance against his work supervisor "challenging the veracity of a misconduct charge" the work supervisor filed against him.[22]   As a result of the misconduct, the inmate lost his job in the prison kitchen.[23]   The inmate requested reinstatement and his supervisor denied reinstatement.[24]   The inmate then filed suit alleging his supervisor denied his request for reinstatement in retaliation for filing a grievance.[25]   Our Court of Appeals held Judge Caldwell improperly dismissed the inmate's retaliation claim because: (1) the inmate "plausibly alleged that his use of the grievance system qualified as a protected activity"; (2) "he plausibly alleged

4

that he suffered an adverse action when he was not reinstated into his kitchen job"; and (3) "evidence that he was denied employment by the same official against whom he had filed a grievance against a month prior and that he received conflicting responses from the other prison officials regarding his ability to be reinstated into his kitchen job, were sufficient at the 12(b)(6) stage to plausibly raise an inference of causation between the protected conduct and the adverse action."[26]

In *Cordero v. Warren*, an inmate filed a grievance against prison officials after the officials wrongfully suspended his visitation privileges.[27] In retaliation for filing the grievances, the officials refused to reinstate his contact visitation privileges for several months.[28] Our Court of Appeals vacated Judge Pisano's dismissal of the inmate's complaint, finding the threat of having visitation privileges withheld could deter a person of ordinary firmness from exercising his constitutional right to file grievances against prison officials.[29]

In *Kelly v. York County Prison*, an inmate at the York County Prison alleged unnamed prison officials denied him employment in retaliation for filing grievances.[30] Our Court of Appeals held the inmate pleaded all three elements of retaliation because: (1) "he was denied employment for filing grievances"; (2) "the filing of grievances is protected under the First Amendment"; and (4) "the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and denial of employment."[31] The Court, nevertheless, affirmed the district court's dismissal of the inmate's complaint because he did "not allege[] who denied him employment, or whom he otherwise holds responsible for the alleged retaliation and why."[32] The Court instructed the inmate could cure this deficiency by amendment.[33]

In *Mitchell v. Horn*, our Court of Appeals reversed Judge Ludwig's dismissal of an inmate's retaliation claim.[34] In his complaint, the inmate alleged a prison official falsely charged

5

him with misconduct in retaliation for the inmate's filing of grievances and lawsuits against the officer.[35] As a result of the misconduct charge, the inmate spent several months in disciplinary confinement. The Court of Appeals held the inmate adequately pleaded a retaliation claim and clarified the "word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him."

Mr. Medina adequately pleads the three elements of a retaliation claim. Like in *Pepe* and *Mitchell*, Mr. Medina alleges he filed a grievance against a prison official, and in retaliation, the official filed misconduct charges against him.[36] This misconduct charge caused Mr. Medina to lose his job (like the inmates in *Pepe* and *Kelly*) and his visitation privileges (like the inmate in *Coredeo*).[37] Like the inmates in *Kelly* and *Mitchell* Mr. Medina uses the word "retaliation" in his claim, and, like in *Pepe,* the official who filed misconduct charges against him is the same person against whom Mr. Medina filed his grievance.[38] Unlike in *Kelly*, Mr. Medina identifies by name the individual whom he holds responsible for the alleged retaliation.

Mr. Medina adequately pleads a causal link between the adverse action and his exercise of a constitutionally protected activity.

### D. Supervisor Hallman does not show a basis for qualified immunity for the remaining retaliation claim.

As Mr. Medina adequately pleads a retaliation claim against Supervisor Hallman, we assess whether qualified immunity shields Supervisor Hallman from the retaliation claim. To determine whether qualified immunity applies, we ask whether the alleged facts show a violation of a constitutional right clearly established at the time of the conduct.[39] "Qualified immunity is an affirmative defense for which the defendants bear the burden of proof."[40] For the purposes of this motion, Supervisor Hallman has not met his burden to establish qualified immunity.

Supervisor Hallman only offers one argument: Mr. Medina "fails to state a viable claim for retaliation" and thus has not pleaded the violation of a constitutional right. [41] As discussed above, we find Mr. Medina pleaded the violation of a constitutional right. Supervisor Hallman does not argue, or offer authority suggesting, the law was not "clearly established at the time of the alleged violation." Because Mr. Medina has adequately alleged a violation of a constitutional right and Supervisor Hallman has not argued the law "was not clearly established," Supervisor Hallman has not established qualified immunity.[42]

### E.     Mr. Medina does not have the burden to plead exhaustion of remedies.

Supervisor Hallman argues we should dismiss Mr. Medina's claims because Mr. Medina "does not aver he exhausted his administrative remedies through all of the required steps of the Jail's grievance process."[43] This argument improperly attempts to ascribe Supervisor Hallman's burden to Mr. Medina.

The Supreme Court instructs "the failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act], and . . . inmates are not required to specifically plead or demonstrate exhaustion in their complaints."[44] Mr. Medina does not have to specifically plead he exhausted his remedies to survive a motion to dismiss; Supervisor Hallman must show Mr. Medina has not exhausted his remedies to escape liability. As Supervisor Hallman has not adduced facts at this stage showing Mr. Medina failed to exhaust his remedies, we deny Supervisor Hallman's motion to dismiss for failure to exhaust administrative remedies.

## III.   Conclusion

We grant Warden Russell's and Administrator Mette's motion to dismiss all claims against them. We grant Supervisor Hallman's motion to dismiss the Eighth Amendment claim

7

against him, but we deny his motion to dismiss the First Amendment retaliation claim against him.

---

[1] "Despite *Iqbal*'s heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney General of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (September 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999))).

[2] ECF Doc. No. 11 at 5.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* at 3, 5.

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.* at 3.

[10] ECF Doc. No. 19. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis when reviewing a 12(b)(6) motion: (1) ("it) we must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) ("it) we should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, ([the] court) we should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[11] ECF Doc. No. 11 at 3, 5.

[12] *Robinson v. Taylor*, 204 Fed. App'x 155, 156 (3d Cir. 2006), (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[13] *Id.; See Rode,* 845 F.2d at 1207.

[14] ECF Doc. No. 11 at 5.

[15] *Id.*; ECF Doc. No. 19 at 8-11.

[16] *Robinson*, 204 Fed. App'x at 156 (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)).

[17] *Williams v. Wetzel*, 776 Fed. App'x 49, 52 (3d Cir. 2019).

[18] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation and internal quotation marks omitted).

[19] *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010).

[20] *Kelly v. York County Prison*, 340 Fed. App'x. 59, 61 (3d Cir. 2009) (quoting *Mitchell*, 318 F.3d at 530); *see also Mack v. Yost*, 427 Fed. App'x 70, 72 (3d. Cir. 2011); *Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2020 WL 890212 at *11 (E.D. Pa. Feb. 21, 2020); *Morales v. Berks County Prison*, No. 10-5117, 2011 WL 2746077, at *5 (E.D. Pa. July 14, 2011) (same).

[21] *Pepe v. Lamas*, 679 Fed. App'x 173, 175 (3d Cir. 2017).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 175-76.

[27] 612 Fed. App'x 650, 651-52 (3d Cir. 2015).

[28] *Id.*

[29] *Id.* at 653.

[30] 340 Fed. App'x at 61.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] 318 F. 3d at 526.

[35] *Id.* at 530.

[36] ECF Doc. No. 11 at 5.

[37] *Id.*

[38] *Id.*

[39] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

[40] *Jennings v. Borst*, No. 18-05624, 2019 WL 4447593, at *3 (E.D. Pa. 2019) (citing *Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012)).

[41] ECF Doc. No. 19 at. 13.

[42] *Love v. N.J. Dep't of Corr.*, No. 15-404, 2016 WL 2757738, at *11 (D.N.J. May 12, 2016) ("As Defendants have not argued that these constitutional claims are not clearly established, Defendants have not shown that they are entitled to qualified immunity as to the claims this Court permits to proceed, and Defendants motion as to qualified immunity is denied without prejudice.")

[43] ECF Doc. No. 19 at 12.

[44] *Jones v. Bock*, 549 U.S. 199, 216 (2007).