# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIAM OMAR MEDINA | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 20-2426 |
| ALFRED HALLMAN | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                          June 23, 2021

      An incarcerated person suing a prison supervisor for allegedly imposing disciplinary sanctions in retaliation for allegedly complaining about the supervisor's sexual harassment must show some causal connection between his alleged complaints and the sanctions. While the incarcerated person alleges he told persons about the supervisor's alleged harassment, he adduces no evidence the misconduct citation is in any way connected with his harassment charge made either before the misconduct citation or almost a month later. There is no evidence, for example, of the prison supervisor knowing of the incarcerated person's harassment charge when he issued the misconduct report leading to an investigation and sanction. There is no evidence of anyone (besides the incarcerated person) knowing of the incarcerated person's harassment charge against the supervisor before the misconduct complaint. After discovery and the incarcerated person failing to adduce evidence demonstrating a basis for a retaliation claim, we today grant the prison supervisor's motion for summary judgment on the remaining retaliation claim.

**I.    Adduced facts**[1]

      William Omar Medina worked in the Lehigh County Jail's kitchen while awaiting trial on aggravated assault and robbery charges.[2] The Jail contracted with Trinity Services Group, Inc. to

provide food service.³ Trinity employee Alfred Hallman worked as a Food Service Supervisor responsible for supervising inmate employees including Mr. Medina.⁴

### *Trinity Supervisor Hallman files a misconduct report against Mr. Medina.*

Trinity Supervisor Hallman issued two misconduct reports against Mr. Medina charging him with "refusing to obey verbal order" and "disruption with orderly running of the institution" on October 31, 2019.⁵ He also wrote, "disrespect to staff," but crossed out this charge.⁶ He further reported, "William Medina . . . told me I wasn't doing my job. I have to tell him 10 times before he does what I want. He disrupts the kitchen while food line is running. He is always talking loudly. He cannot stay in his work area always roaming around kitchen."⁷

### *Lieutenant Dugan and the Misconduct Board review the misconduct.*

Lieutenant Brian Sean Dugan reviewed Trinity Supervisor Hallman's October 31, 2019 misconduct report.⁸ Lieutenant Dugan, in accord with the Inmate Disciplinary Guidelines Book, marked "refusing to obey orders" and "disrupting the orderly running the kitchen" as "major" misconduct and suspended Mr. Medina from his kitchen job.⁹ Lieutenant Dugan did not impose additional punishment.¹⁰

The Jail's misconduct board then reviewed Lieutenant Dugan's decision charging Mr. Medina with misconduct.¹¹ Mr. Medina completed a "Misconduct Inmate Version" form as part of the review process.¹² The Jail intends the form "to give [the prisoner] the opportunity to prepare [his] version of the incident" before the hearing.¹³ Mr. Medina provided his version of events, disputing Trinity Supervisor Hallman's account. Mr. Medina asserted he never stopped working, but rather expressed disagreement with the way Trinity Supervisor Hallman asked him to complete a task.¹⁴ Mr. Medina said, "Mr. Hallman is known to all inmates to be disrespectful,

unprofessional and abusing his authority due to being [miserable] at age of 77 yrs old towards us."[15]

Mr. Medina requested a hearing in front of a three-member misconduct panel and waived his right to appeal their decision.[16] Mr. Medina requested the assistance of Corrections Officer O'Donnell and listed three inmate witnesses to testify on his behalf.[17]

A three-member panel consisting of Lieutenant Brooke Loan, Case Manager Tracy Kester, and Secretary Wanda Perez held a misconduct hearing on November 14, 2019.[18] The panel filled out a "Misconduct Action Report" after the hearing.[19] The panel imposed a five-day suspension from Mr. Medina's job and ten days probation for each offense, totaling ten days suspension and twenty days probation.[20] Neither party adduced evidence of what "probation" entails. The panel reasoned, "[w]itnesses in the kitchen observed [Mr. Medina] being disrespectful to the Supervisor."[21]

### *Mr. Medina files a grievance against Trinity Supervisor Hallman for sexual harassment and Grievance Coordinator Mette investigates.*

Mr. Medina then filed an "Inmate Formal Grievance" against Trinity Supervisor Hallman roughly two weeks after his misconduct hearing on November 27, 2019.[22] For the first time in his dispute with Mr. Hallman, he alleged Mr. Hallman made sexually inappropriate comments to him a month earlier on October 27, 2019 – four days before Mr. Hallman filed the misconduct report.[23] Mr. Medina said he reported the harassment to Supervisor Richard Tacaks and asked Supervisor Tacaks to remove him from his job in the kitchen.[24] Mr. Medina alleged Mr. Hallman wrote the misconduct in retaliation for Mr. Medina's report to Supervisor Tacaks.[25]

Following the instructions on the form, Mr. Medina listed the actions he took and witnesses he contacted before submitting his grievance, saying he "[s]poke to Supervisor Richard from Kitchen Staff, Advised C.O. O'Donnell and talked to Lieutenant John Ur[ban]."[26]

3

Grievance Coordinator Douglas Mette investigated Mr. Medina's grievance. Grievance Coordinator Mette emailed the grievance to Lieutenant Dugan, Lieutenant Loan, Lieutenant Urban, Lieutenant Daily, and Lieutenant Dawson and wrote "[t]he attached Grievance requires immediate investigation requiring sexual harassment allegations. Please have your grievance reply to me no later than 12-10-19. Thank you in advance."[27] Grievance Coordinator Mette also forwarded Mr. Medina's grievance and the accompanying message to Supervisor Richard Takacs and added "FYI … this grievance needs to be investigated immediately. Please have your grievance reply to me as soon as possible."[28]

Supervisor Takacs replied, saying neither Mr. Medina nor Corrections Officer O'Donnell ever informed him of a situation making Mr. Medina "uncomfortable" or accusing Trinity Supervisor Hallman of sexual harassment. He also denied Mr. Medina ever asked to be removed from his job or reassigned. Supervisor Takacs also confirmed Trinity Supervisor Hallman's report of Mr. Medina's refusal to obey orders and disruptive behavior in the kitchen.[29] Supervisor Takacs concluded Mr. Medina's claims Trinity Supervisor Hallman disrespected him in a sexual or degrading manner could not be confirmed.[30]

Corrections Officer O'Donnell does not remember specific incidents with Mr. Medina, but recalls Mr. Medina and Trinity Supervisor Hallman not "see[ing] eye to eye."[31] He attributed this dysfunction to Trinity Supervisor Hallman's desire to have "things done in a certain way" and Mr. Medina's failure to follow his orders.[32]

Mr. Hallman swears he had no knowledge of Mr. Medina reporting any alleged harassment to Supervisor Tacaks or any other person at the jail before Mr. Medina's November 27, 2019 grievance.[33]

The parties offer no other evidence or accounts of Mr. Medina's and Trinity Supervisor Hallman's interactions.

### *Mr. Medina writes to Case Manager Corch.*

Mr. Medina wrote case manager Megan Corch at some undisclosed time seeking information "for a pro se suppression and please put me on the list for available jobs."[34] He also said, "Hallman verbally harassed me in a sexual manner inviting me to his private area, saying 'suck my dick.'"[35] Case Manager Corch responded, "You already work in the kitchen. You will not be removed from that job."[36] Ms. Corch explained her response, "I did not remove him from the job because [Mr. Medina] is classified as a violent offender and can only work in the kitchen . . . unless you quit from the kitchen, we don't remove you."[37]

Neither party adduced evidence of the timing of Mr. Medina's report to Case Manager Corch of Trinity Supervisor Hallman's alleged misconduct. We do not know if Mr. Medina reported to Case Manager Corch before or after Trinity Supervisor Hallman filed the misconduct – though Mr. Medina argues in his response without record evidence or being under oath he made the report "months before" he filed his grievance.

Regardless of when Mr. Medina made his report to Ms. Corch, there is no evidence suggesting Ms. Corch told anyone about Mr. Medina's allegations against Trinity Supervisor Hallman or took actions beyond responding to Mr. Medina. Ms. Corch swears she has had "no interactions with" Supervisor Hallman while working at the jail.[38] There is no contrary evidence.

## II. Analysis

Mr. Medina sued Trinity Supervisor Hallman, Grievance Coordinator Mette, and Prison Warden Kyle Russell, alleging cruel and unusual punishment and retaliation for exercising his

First Amendment right to file grievances. We dismissed all claims against Grievance Coordinator Mette and Warden Russell and the cruel and unusual punishment claims against Trinity Supervisor Hallman, but we allowed Mr. Medina to proceed on his retaliation claim against Trinity Supervisor Hallman.[39] Trinity Supervisor Hallman now moves for summary judgment on Mr. Medina's retaliation claim.[40] We grant judgment to Trinity Supervisor Hallman because Mr. Medina cannot prove a causal link between his protected activity and Trinity Supervisor Hallman's decision to write up Mr. Medina for misconduct.

To survive summary judgment, Mr. Medina must show "the conduct which led to the alleged retaliation was constitutionally protected."[41] He must next "show that he suffered some 'adverse action' at the hands of prison officials."[42] He satisfies this requirement by demonstrating the alleged retaliatory action would be "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."[43] "Once these two threshold criteria are met," our Court of Appeals instructs us to apply a burden-shifting framework to determine whether a causal link exists between the protected activity and the retaliatory action.[44] Mr. Medina bears "the initial burden of proving . . . his constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline him."[45] He may satisfy this burden by showing "either (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[46] If he satisfies this burden, the burden shifts "to [Trinity Supervisor Hallman] to prove by a preponderance of the evidence [he] would have taken the same disciplinary action even in the absence of a protected activity."[47]

Where the alleged retaliatory conduct occurred before a prisoner files a grievance, courts in this Circuit generally grant summary judgment to the prison official unless the prisoner

adduces evidence the prison official knew of the prisoner's intent to file a grievance. For example, in *Marten v. Hunt*, a prisoner filed a claim alleging a guard retaliated against him for filing a grievance.[48] But the prisoner filed the grievance *after* the alleged retaliatory conduct.[49] Judge Baxter found the prisoner "put the proverbial cart before the horse as this grievance cannot form the basis of the constitutionally protected conduct because the alleged retaliatory acts occurred before the grievance."[50]

Judge Mariani also granted summary judgment on a prisoner's retaliation claim in *Lane v. Benoit* because the parties did not dispute the prisoner filed the grievance "after the alleged retaliatory conduct."[51] Judge Mariani held the grievance could "not be the impetus" for the retaliatory conduct.[52]

But in *Watson v. Rozum*, our Court of Appeals confirmed a prisoner's retaliation claim may survive summary judgment if the prisoner informed the defendant of his intent to file a grievance before the retaliatory conduct.[53] In *Watson*, prison officials searched the prisoner's cell and found a radio.[54] The antenna to the radio broke as the official inspected it.[55] The prisoner and the official went to fill out the paperwork required for confiscations.[56] The prisoner insisted the official take responsibility for breaking the radio on the form, and the official refused.[57] The prisoner then asked for a grievance form, and another officer refused to give him one.[58] The officials decided to file a misconduct against the prisoner for having the radio because he gave "them a hard time."[59] The prisoner then filed a grievance, and later filed a retaliation claim, against the prison official.[60]

Our Court of Appeals considered the fact the prisoner filed the grievance *after* the alleged retaliation.[61] Our Court of Appeals explained, "we do not believe that chronology necessarily defeats [the prisoner's] retaliation claim because he informed prison officials of his intent to file

a grievance and request an appropriate form . . . before any misconduct was filed against him."[62] The court continued, "we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other."[63]

Mr. Medina adduces no evidence satisfying his initial burden to show his November 27, 2019 grievance substantially motivated Trinity Supervisor Hallman's decision to file a misconduct report. Like in *Marten* and *Lane*, Trinity Supervisor Hallman filed the misconduct *before* Mr. Medina filed his grievance. Trinity Supervisor Hallman wrote the misconduct against Mr. Medina on October 31, 2019. Mr. Medina filed his grievance on November 27, 2019 about a month after Trinity Supervisor Hallman filed the misconduct and around two weeks after the misconduct hearing.

Unlike in *Watson*, where the prisoner told the corrections officers he planned to file a grievance against them, there is no evidence Trinity Supervisor Hallman knew of Mr. Medina's allegations against him or Mr. Medina's intent to file a grievance. Trinity Supervisor Hallman swears he had no knowledge of any of Mr. Medina's allegations against him before he filed the misconduct. Mr. Medina claimed in his grievance he informed Supervisor Takacs and Corrections Officer O'Donnell of Trinity Supervisor Hallman's alleged inappropriate conduct, but both Supervisor Takacs and Corrections Officer O'Donnell denied Mr. Medina's story. While Mr. Medina claims he reported the alleged misconduct to Case Manager Corch, there is no evidence showing whether he did so before or after Trinity Supervisor Hallman filed the misconduct, and there is no record showing Case Manager Corch shared Mr. Medina's allegations with anyone else, let alone Trinity Supervisor Hallman, with whom Ms. Corch swears she never interacted.

We reiterate even if Mr. Medina could show Mr. Hallman did, in fact, sexually harass him on October 27, 2019, and Mr. Medina reported the alleged conduct to Supervisor Takacs, Corrections Officer O'Donnell, or Case Manager Corch before Mr. Hallman filed the misconduct report, Mr. Medina would still need to adduce some evidence Trinity Supervisor Hallman knew about Mr. Medina's report before Mr. Hallman filed the misconduct. Mr. Medina failed to adduce evidence of Mr. Hallman's knowledge of Mr. Medina's allegations. Mr. Hallman swears he had no knowledge of Mr. Median's accusations against him. As Supervisor Tacaks denies Mr. Medina reported issues with Mr. Hallman, no reasonable juror could find Supervisor Tacaks relayed the unconfirmed report to Mr. Hallman. Corrections Officer O'Donnell also denies hearing of or witnessing sexual harassment, so we have no basis to infer Corrections Officer O'Donnell warned Mr. Hallman of a potential future grievance. Case Manager Corch swears she never interacted with Mr. Hallman, so it is implausible she told Mr. Hallman of Mr. Medina's accusations.

In essence, the only evidence Mr. Medina adduces in support of his retaliation claim is his own account of events memorialized in his unsworn inmate grievance form filed a month after Trinity Supervisor Hallman submitted the misconduct. But "self-serving testimony cannot be used to . . . avoid summary judgment when uncorroborated and contradicted by other evidence of record."[64] Mr. Medina's account of events outlined in his grievance finds no corroboration in the record and instead is contradicted by the sworn declaration of Trinity Supervisor Hallman, the sworn deposition testimony of Grievance Coordinator Mette, the email from Supervisor Richard Tacaks replying to the grievance investigation, and the sworn deposition testimony of Corrections Officer O'Donnell. Mr. Medina fails to satisfy his initial burden of adducing sufficient evidence for a reasonable jury to find his unconfirmed reporting of

9

Trinity Supervisor Hallman's conduct on November 27, 2019 motivated Trinity Supervisor Hallman to file a misconduct against him on October 31, 2019.

**III. Conclusion**

    We grant Trinity Supervisor Hallman's motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. Supervisor Hallman filed a statement of undisputed facts at ECF Doc. No. 50 and an appendix at ECF Doc. No. 50-1. References to the appendix are by ECF document number and the corresponding Bates number, for example, "DefExhsMSJ00001."

[2] ECF Doc. No. 50-1 at DefExhsMSJ00049; DefExhsMSJ00073,

[3] *Id.* at DefExhsMSJ0112.

[4] *Id.* at DefExhsMSJ0112-13.

[5] ECF Doc. No. 50-1 at DefExhsMSJ0037.

[6] *Id.*

[7] *Id.*

[8] ECF Doc. No. 50-1 at DEFEXHSMSJ0027.

[9] *Id.* at DefExhsMSJ0027-29.

[10] *Id.* at DefExhsMSJ0028-29.

[11] *Id.* at DefExhsMSJ0029.

[12] *Id.* at DefExhsMSJ0038.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at DefExhsMSJ0040.

[17] *Id.*

[18] *Id.* at DefExhsMSJ0041.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at DefExhsMSJ0109.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at DefExhsMSJ0111.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at DefExhsMSJ0053.

[32] *Id.*

[33] *Id.* at DefExhsMSJ0114.

[34] ECF Doc. No. 50-1 at DefExhsMSJ008-010.

[35] *Id.*

[36] *Id.* at DefExhsMSJ010.

[37] *Id.*

[38] *Id.* at DefExhsMSJ0008.

[39] ECF Doc. No. 20.

[40] ECF Doc. No. 50. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to

permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019))."The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))."If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[41] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 333-34.

[46] *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

[47] *Rauser*, 241 F.3d at 33-34.

[48] *Marten v. Hunt*, No. 08-077, 2009 WL 1858257, at *6 (W.D. Pa. June 29, 2009).

[49] *Id.*

[50] *Id.*

[51] *Lane v. Benoit*, No. 17-0070, 2020 WL 1503675, *5 (M.D. Pa. Mar. 30, 2020).

[52] *Id.*

[53] 834 F.3d at 417.

[54] *Id.* at 420.

[55] *Id.*

[56] *Id.* at 420-21.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 421.

[60] *Id.*

[61] *Id.* at 422.

[62] *Id.*

[63] *Id.*

[64] *Real v. Huber*, No. 13-1054, 2015 WL 13738830, at *8 (M.D. Pa. Nov. 17, 2015); *see also Thomas v. Delaware State Univ.*, 626 Fed. App'x 384, 2015 WL 5520108, at *4 n.6 (3d Cir. Sept. 21, 2015) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Brooks v. DiGuglielmo,* No. 05–4588, 2008 WL 5187529, at *13 (E.D.Pa. Dec.9, 2008) ("A plaintiff must come forward with more than general attacks upon the defendants' motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive").